51 F.3d 281
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
George Meng OLARTE; Estrella Olarte; Katherine Olarte;
Genevieve Olarte; George Hendrick Olarte; George
Paul Olarte, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70029.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 21, 1995.*
Decided April 5, 1995.
 
 Before: SNEED, POOLE, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 George Meng Olarte; his wife, Estrella Olarte; and their four minor children, Katherine, Genevieve, George Hedrick, and George Paul, who are all natives and citizens of the Phillipines, petition for review of the Board of Immigration Appeals' ("BIA") dismissal of their appeal from the immigration judge's ("IJ") denial of their applications for asylum and withholding of deportation pursuant to sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. Secs. 1158(a) and 1253(h)(1). Petitioners contend that the BIA (1) erred by finding that they did not establish a well-founded fear of persecution or a clear probability of persecution on account of political opinion or membership in a particular social group, and (2) "short circuited petitioners' due process right to present relevant evidence" by not permitting Estrella Olarte to testify in support of her husband's application, through which all the Olartes sought relief. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we affirm.
 
 
 3
 * Standard of Review
 
 
 4
 When the BIA has exercised its authority to conduct a de novo review of the IJ's decision, our review is limited to the BIA's decision. Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994). The legal conclusions of the BIA are reviewed de novo. Abedini v. INS, 971 F.2d 188, 190-191 (9th Cir.1992). Factual determinations underlying the BIA's order are reviewed under the "substantial evidence" standard. INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992); Shirazi-Parsa, 14 F.3d at 1427; 8 U.S.C. Sec. 1105a(a)(4). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). Because the burden of proof is on the applicant to demonstrate eligibility for asylum, this court will reverse only if the evidence presented would compel a reasonable factfinder to reach a contrary result. Id.
 
 II
 Merits
 
 5
 1. Substantial Evidence of Well-Founded Fear of Persecution
 
 
 6
 Petitioners contend that the BIA erred by finding they had not established a well-founded fear of persecution on account of their political opinion or membership in a community of cattle ranchers on Mindinao island. This contention lacks merit.
 
 
 7
 Under 8 U.S.C. Sec. 1158(a), the Attorney General has discretion to grant an alien asylum if the alien is determined to be a "refugee." See 8 U.S.C. Sec. 1158(a). A refugee is defined as any person who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of ... membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A).
 
 
 8
 The "well-founded fear" standard has both objective and subjective components. The subjective component may be satisfied by "an applicant's credible testimony that he genuinely fears persecution." Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993) (citing Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992)). "The objective component requires a showing by 'credible, direct, and specific evidence of facts supporting a reasonable fear of persecution' " on the relevant ground. Id. (quoting Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam)). The burden is on the applicant to meet this standard. See 8 C.F.R. Sec. 208.5 (1993).
 
 A. Political Opinion
 
 9
 It is undisputed that petitioners have a subjective fear of persecution by the New People's Army (NPA) and Moro National Liberation Front (MNLF) upon their return to the Phillipines. But substantial evidence in the record supports the BIA's finding that petitioners failed to establish past persecution or a well-founded fear of future persecution on account of their own political opinions. See Abedini, 971 F.2d at 191. The BIA recognized petitioners' reports that the NPA and MNLF guerrila groups attempted to extort money from them by threatening violence in two letters and two phone calls made in 1983 and 1984 when the Olartes ran a cattle ranch on the island of Mindanao. The BIA also took into account the murders of neighboring landowners in 1983 and 1984, which occurred after they had refused to comply with guerrila demands for money, as well as the kidnapping of George Meng Olartes' sister in 1990 by alleged MNLF forces and her release following compliance with the kidnappers demands for ransom. Nevertheless, the record supports the BIA's determination that the guerillas' reported attempts at extorting money by threats were not made against petitioners on account of their political opinion, but to gain financial support for their fight against the government of the Phillipines. See Elias-Zacarias, 112 S.Ct. at 816; Abedini, 971 F.2d at 192 & n. 1. The "mere existence of a generalized 'political' motive underlying" the guerrillas' demands for money is inadequate to establish that the Olartes fear "persecution on account of political opinion." Elias-Zacarias, 112 S.Ct. at 816.
 
 B. Particular Social Group
 
 10
 This court has established four requirements for establishing eligibility for relief premised upon membership in a particular social group: (1) the "class of people identified by petitioners is cognizable as a particular social group," (2) the petitioners must demonstrate they qualify as members of the group, (3) "the purported social group [must have] in fact been targeted for persecution on account of the characteristics of the group members," and (4) "special circumstances are present to warrant us in regarding mere membership in the social group as constituting per se eligibility for asylum or prohibition of deportation." Sanchez-Trujillo v. INS, 801 F.2d 1571, 1574-75 (9th Cir.1986) (citations, internal quotations, and footnotes omitted).
 
 
 11
 The purported social group in which the George Meng Olarte claims membership--wealthy cattle ranchers--fails to meet even the first part of this test. See De Valle v. INS, 901 F.2d 787, 793 (9th Cir.1990). In Sanchez-Trujillo, we stated that
 
 
 12
 the phrase "particular social group" implies a collection of people closely affiliated with each other, who are actuated by some common impulse or interest. Of central concern is the existence of a voluntary associational relationship among the purported members, which imparts some common characteristic that is fundamental to their identity as a member of that discrete social group.
 
 
 13
 Id. at 1576 (footnote omitted). The identity of a wealthy cattle rancher in the Phillipines does not stem from any associational relationship with other wealthy cattle ranchers, but from the fact that an individual is both wealthy, as compared to other Phillipinos, and owns cattle. In addition, substantial evidence supports the IJ and BIA's conclusions that George Meng Olarte does not have a well-founded fear of persecution based on his status as a wealthy cattle rancher because he was no longer engaged in ranching and resided with his family, free of threats, in Manila from 1984 until their entry into the United States in 1987. See Cuadras v. INS, 910 F.2d 567, 571 n. 2 (9th Cir.1990) (Court may consider that alien "could avoid geographic localized danger by settling in a different part of the country." (citing Quintalla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986))); Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986) ("Repatriation to a country does not force the alien to return to the [area] he left.").
 
 C. Withholding of Deportation
 
 14
 Because demonstrating a right to withholding of deportation requires the satisfaction of the higher standard of proof of "clear probability of persecution," INS v. Cardoza-Fonseca, 480 U.S. 421, 449-50 (1987), petitioners' failure to satisfy the lesser standard of proof for asylum necessarily results in their failure to demonstrate a right to withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 2. Denial of Due Process
 
 15
 In deportation proceedings, "an alien is entitled to the fifth amendment guaranty of due process, which is satisfied only by a full and fair hearing." Cuadras, 910 F.2d at 573. (internal quotations and citations omitted). To prevail on a due process claim, the alien must show that the alleged procedural error was prejudicial. Id.
 
 
 16
 Here, the Olartes allege that the IJ erred by not permitting Estrella Olarte to testify in support of her husband's application, through which the Olartes sought relief. Given that the INS stipulated to the facts to which Estrella Olarte would have testified, we agree with the BIA that the Olartes failed to demonstrate any prejudice as a result of the IJ's decision not to permit Estrella Olarte to testify. See id.
 
 
 17
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3